[Civ. No. 3700. Second Appellate District, Division One.—February 16, 1922.]

GENEVRIA E. WALL, Respondent, v. MARGARET CALHOUN et al., Defendants; CLOVER–LEAF CHOCOLATE COMPANY (a Corporation), Appellant.

[1] MONEY HAD AND RECEIVED—NATURE OF TRANSACTION—LOAN AND NOT STOCK SUBSCRIPTION—EVIDENCE—FINDING.—In this action to recover a certain sum of money, with interest, which plaintiff alleged under different counts of her complaint as having been, respectively, (1) loaned by her to the defendants, and (2) received by the defendants for her use and benefit, while the evidence was conflicting, there was ample evidence to justify the trial court in concluding that the transaction was one in which plain-

tiff loaned money to the defendant corporation, and not one in which the money was received by said defendant on account of a subscription for corporate stock.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hocker & Austin and Overton, Lyman & Plumb for Appellant.

Percy Hight for Respondent.

JAMES, J.—Plaintiff sued to recover the sum of twelve hundred dollars with interest, which she alleged under different counts of her complaint as having been, respectively, (1) loaned by her to the defendants; and (2) received by the defendants for her use and benefit. The findings of the court were in support of the latter cause of action and against the defendant corporation only. The corporation defendant has appealed from the judgment.

[1] So far as we can determine from the record, the only question involved under the evidence was as to whether the twelve hundred dollars was received from the plaintiff by the defendant corporation as a loan, or as on account of a subscription for corporate shares. There was a conflict of the evidence on this question. Defendant Alexander, prior to the transactions herein considered, was engaged in business as a candy manufacturer. Needing more capital with which to conduct that business, he interested defendants Calhoun and Rebecca Anderson, and they invested a considerable sum of money in the business. At the time this was done, however, a corporation was formed under the name of Clover-Leaf Chocolate Company. Defendant Calhoun became president of this corporation, Rebecca Anderson vice-president, Alexander secretary, treasurer and general manager. Rebecca Anderson was the mother of defendant Calhoun. The latter did not take active charge of the business. Being away from the town wherein it was conducted, a portion of the time at least, she procured her brother, William A. Anderson, to come from the east and actively engage in the business, representing the Calhoun

and Anderson interests. At the time of the transactions had with the plaintiff, the corporation had not issued its stock and had not applied to the corporation commissioner for a permit to sell it. However, it conducted its candy manufacturing business under the corporate name. There came a time when more money was needed to satisfy creditors of the corporation and to purchase necessary supplies. Alexander first procured from the plaintiff two hundred dollars, which he testified was loaned to the corporation and used in its business. Negotiations were then entered into with the plaintiff, with a view to having plaintiff and another person invest two thousand five hundred dollars each in the business. Plaintiff testified that she was unable to procure the two thousand five hundred dollars necessary to carry out that plan; that W. A. Anderson, representing that the corporation was in dire need of the money, asked her whether she could not procure a thousand dollars. This she did, and both her testimony and that of Alexander was to the effect that it was understood that this one thousand dollars was to be loaned to the corporation. She asked for some security and Anderson wrote out a paper which recited that Rebecca W. Anderson and William A. Anderson agreed to "go security" for twelve hundred dollars until one thousand shares of stock of the defendant corporation was turned over to plaintiff. The testimony was that plaintiff objected to this document and insisted that she was loaning the money and not buying stock and would not agree to the terms of the writing as to the payment in stock to be made her, whereupon W. A. Anderson agreed to fix it up; that she kept the paper for several days and returned with another, phrased in such a manner as to meet the conditions of the loan transaction, and containing the statement that she might have the option to accept either cash or stock in the amount of twelve hundred dollars. Anderson refused to have his mother sign the document, objecting to the condition that the twelve hundred dollars should be repaid in cash, whereupon plaintiff shortly thereafter demanded the return of her money and brought this action. It will at once be seen that there was ample evidence to justify the trial court in concluding that the transaction was one wherein the plaintiff loaned twelve hundred dollars to defendant corporation. Where the evidence is conflicting the trial judge's conclusion

must be taken as a correct determination of the facts. That the corporation received the money and used it in its business no question is made by any witness. Counsel for appellant cite a provision of the Corporate Securities Act, prohibiting corporations from selling or negotiating the sale of their securities until a permit has been issued, but we fail to see how any condition of that law can affect the rights of the plaintiff to the judgment awarded her. From the findings of the court the corporation borrowed the money from her and did not receive it on account of a stock subscription.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.